❐ Original    ❐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.22-961M(NJ) |
| The Cellular Telephone Assigned Call Number (312) 834-8268 | ) ) ) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before September 1, 2022 _____ *(not to exceed 14 days)*
❐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
*(United States Magistrate Judge)*

❐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❐ for _____ days *(not to exceed 30)*  ☑ until, the facts justifying, the later specific date of _____ 02/13/2023 _____ .

Date and time issued 8/17/2022 @ 9:31 a.m.: _____

*Judge's Signature*

City and state:   Milwaukee, Wisconsin _____      Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

1. Records and information associated with the cellular device assigned call number (312) 834-8268 (referred to herein and in Attachment B as "Target Cell Phone #1"), with a listed subscriber(s) Christopher RUEDA that is in the custody or control of AT&T Corporation, (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, Florida 33408.

2. The Target Cell Phone 1.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

     a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone #1 from the time period commencing on January 1, 2018:

          i.  Names (including subscriber names, user names, and screen names);

          ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

          iii.  Local and long distance telephone connection records;

          iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

          v.  Length of service (including start date) and types of service utilized;

          vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber

2

Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone #1, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT"), and Network Event Location Operating System information (NELOS).

b. Information associated with each communication to and from the Target Cell Phone #1 for a period of up to 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each

communication, as well as per-call measurement data (also known as "real-time tool" or "RTT"), and Network Event Location Operating System information.

c. Information about the location of the Target Cell Phone #1 for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, including Network Event Location Operating System information.

    i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone #1 on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

    ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846, involving Jovani O Rueda-Sanabria.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT
for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>The Cellular Telephone Assigned<br>Call Number (312) 834-8268 | )<br>)<br>)<br>)<br>)<br>)    Case No. 22-961M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | Conspiracy to distribute and possess with intent to distribute controlled substances. |

The application is based on these facts:
See Attached Affidavit.

☐ Continued on the attached sheet.

☑ Delayed notice of __180__ days *(give exact ending date if more than 30 days:* __02/13/2023__ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

DCI SA Jeffrey Hale
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means).*

Date: 8/17/2022
_____

_____
*Judge's signature*

City and state:   Milwaukee, Wisconsin     Honorable Nancy Joseph, U.S. Magistrate Judge
*Printed name and title*

I, Jeffrey Hale, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.        I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **(312) 834-8268** ("**Target Cell Phone #1**"), whose service provider is AT&T Corporation ("Service Provider") a wireless telephone service provider headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, Florida 33408.  **Target Cell Phone #1** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.        Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act.  See 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute.  See 18 U.S.C. § 3123(b)(1).

3.        I am a state certified law enforcement officer employed as a Special Agent with the Wisconsin Department of Justice, Division of Criminal Investigation (DCI) and have been a sworn officer in the State of Wisconsin for approximately 27 years.  I am currently assigned to the North Central High Intensity Drug Trafficking Area (HIDTA) Opioid Task Force.  I am also a federally deputized Task Force Officer with the United States Department of Justice, Drug Enforcement Administration (DEA).  As such, I am an investigative or law enforcement officer of the United States within the meaning of

Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

4. In connection with my official DCI and DEA duties, I investigate criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 924(c), 1956 and 1957, Title 21, United States Code, Sections 841, 843, 846, 848, 952, and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage and importation of controlled substances. I have participated in the execution of multiple federal search warrants.

5. I have received training and have experience in the area of controlled substances investigations, money laundering, financial investigations, and various methods that drug dealers use to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of controlled substances laws to include other violations associated with the trafficking of controlled substance. I have participated in numerous drug investigations using various means of investigation including but not limited to, a wire investigation, the execution of search warrants, the use of subpoenas, and the use of informants. I have assisted with search warrants for items related to gang investigations, firearms offenses, drug trafficking, including cellular telephones and other electronic telecommunication devices.

6. The facts in this affidavit come from my personal observations, my training and experience, my review of documents, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 (conspiracy to distribute controlled substances) have been committed, are being committed, and/or will be

committed by Jovani O. RUEDA-SANABRIA, Erick A. MUNOZ, Juan D. DIAZ and other unknown persons.  There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

8.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

9.      The Federal Bureau of Investigation (FBI) and North Central High Intensity Drug Trafficking Area (HIDTA) is investigating Jovani O. RUEDA-SANABRIA (DOB: XX/XX/1989), Erik A. MUNOZ (DOB: XX/XX/1995), Juan D. DIAZ (DOB: XX/XX/1989) and other unidentified persons involved in a drug trafficking organization (DTO).  The investigation to date has included traditional law enforcement methods, including, but not limited to: interviews with confidential sources and sources of information; information gathered from other law enforcement officers; documentary evidence; pen register, trap and trace, and telephone toll data; controlled meetings with targets, recorded telephone calls with targets, and physical surveillance.

10.     In May 2022, a confidential source (CS), CS-1, provided information to agents about MUNOZ and his drug trafficking activities in the Chicago and Wisconsin area.  CS-1 stated that MUNOZ contacted CS-1 and offered to sell wholesale quantities of cocaine to CS-1 at MUNOZ's residence in Milwaukee, WI.  MUNOZ contacted CS-1 using telephone number (414) 687-5553.  Through several consensually recorded phone calls and SMS messages, MUNOZ agreed to retrieve approximately five kilograms of cocaine.  The determined price for each kilogram of cocaine was $28,500 U.S. currency. The five kilograms of cocaine would be exchanged for a total of $142,500 United States currency.

11.     CS-1 has one prior misdemeanor conviction for vandalism.  CS-1 is cooperating in hopes of receiving consideration relating to a March 2019 arrest for an attempted purchase of one kilogram of cocaine. Additionally, CS-1 has been paid approximately $76,243.74 to date in exchange for CS-1's cooperation. CS-1 has proven reliable and credible, and information provided by CS-1 has led to multiple narcotics seizures and has been corroborated by independent investigative techniques, to include toll records, recorded conversations, and physical surveillance conducted by law enforcement.

12.     Over the next several weeks, MUNOZ and CS-1 had multiple conversations via recorded phone calls and SMS messages about the purchase of kilogram quantities of narcotics.

13.     Based on the information and the context of the phone calls and text messages between CS-1 and MUNOZ, it was believed that MUNOZ was arranging a narcotics transaction with CS-1 to be conducted at MONOZ's residence located at 3607 W. Rogers Street, Milwaukee, Wisconsin 53215.

14.     Subscriber information on telephone (414) 687-5553 comes back to Erick MUNOZ, 3607 W. Rogers Street, Milwaukee, Wisconsin 53215.  A WE energies check confirmed that MUNOZ has been on the utilities account for 3607 W. Rogers Street since 2016.  In addition, MUNOZ identified this address in communications with CS-1.

15.     Agents accordingly applied for and received a federal search warrant for 3607 W. Rogers Street, Milwaukee, Wisconsin.

16.     On June 21, 2022, at the direction of handling agents, CS-1 coordinated the sale of five kilograms of cocaine with MUNOZ at his residence located at 3607 W. Rogers Street.

17.     Prior to the search warrant being executed, surveillance was conducted around the target residence.

18.     At approximately 5:25 p.m., law enforcement observed a gray Dodge Ram pickup truck bearing Wisconsin registration plate (SE-6710) pull into the alley behind the residence and briefly stop.  Law enforcement observed the Dodge circle the

block and again pull into the alley behind the residence at 3607 W. Rogers Street. The Dodge then parked on the concrete slab behind the residence. The Dodge was occupied by two Hispanic males.

19. Law enforcement observed a Hispanic male, who was wearing a yellow/neon style construction shirt, exit the driver's side door of the Dodge. The unknown Hispanic male then retrieved a dark colored bag from the vehicle and walked up to the southeast door of the target residence and entered.

20. Law enforcement observed an unknown Hispanic male exit the passenger side door of the Dodge and then enter the driver's seat. The Dodge then traveled out of the alley and parked facing northbound near the address of 2078 S. 36th Street. A check of the Wisconsin registration plate for the Dodge showed it lists to a Christopher RUEDA (DOB: XX/XX/1997), with a listed address of 3307 S. 8th Street, Milwaukee, WI 53215.

21. At the direction of handling agents, CS-1 confirmed that the narcotics were inside the residence and the search warrant was executed within a short amount of time after the Hispanic male entered the residence carrying the dark colored bag.

22. MUNOZ was detained while standing on the stairs leading up to his residence from the southeast door.

23. The person that was wearing the yellow/neon style construction shirt and was observed by law enforcement walking up to the residence carrying the bag was detained in the kitchen of 3607 W. Rogers Street. He was identified as DIAZ.

24. A simultaneous traffic stop was also conducted on the gray Dodge Ram (SE-6710) by the Milwaukee Police Department while the search warrant was executed. During the traffic stop, the operator, identified as RUEDA-SANABRIA, was detained. RUEDA-SANABRIA was determined to be the sole occupant of the Dodge Ram.

25. After detaining RUEDA-SANABRIA, case agents noted that RUEDA-SANABRIA was in possession of cellular telephone **(312) 834-8268**, or **Target Cell Phone #1**. Case agents also located approximately 10 additional cellular telephones in the center console of the Dodge Ram that RUEDA-SANABRIA was operating.

26. During the search of 3607 W. Rogers Street, a purple bag was located inside the kitchen freezer of the residence. Inside the purple bag were six brick shaped objects of a white substance that was consistent with kilograms of cocaine. Law enforcement confirmed that this was the same purple bag that DIAZ was observed carrying into the residence.

27. During the search of the residence, a plugged-in money counter was located sitting on the kitchen counter of the residence.

28. Five of the suspected kilogram-size bricks were vacuum sealed. One of the suspected kilogram bricks was wrapped in a black plastic bag. Presumptive testing was conducted on the white powdery substance using the Nark II Scott Reagent field test. The white substance tested positive for the presence of cocaine.

29. Each kilogram package of cocaine was weighed. The cocaine with packaging was found to weigh approximately 1274.6 grams, 1196.1 grams, 1188.8 grams, 1177.1 grams, 1241.1 grams, and 1272.9 grams.

30. RUEDA-SANABRIA was thereafter interviewed at the Milwaukee County Sheriff's Office, located at 821 W. State Street, Milwaukee, WI 53233. During the interview, RUEDA-SANABRIA provided **Target Cell Phone #1** as his contact phone number.

31. RUEDA-SANABRIA denied ownership of the approximately 10 cellular telephones and informed case agents that they weren't his cellular telephones and agents were free to search the phones if they wished. RUEDA-SANABRIA signed a consent to search form for the cellular telephones located in the center console.

32. RUEDA-SANABRIA informed case agents that RUEDA-SANABRIA wished to cooperate with the investigation and RUEDA-SANABRIA was allowed to keep the cellular telephone that RUEDA-SANABRIA stated was "his phone," identified as **Target Cell Phone #1**.

33. During the interview, additional law enforcement responded to the listed address of RUEDA-SANABRIA, which was identified as 3307 S. 8th Street, Milwaukee, WI 53215. A cursory search of RUEDA-SANABRIA's residence, a residence

purportedly shared by RUEDA-SANABRIA, his mother, father, and brother (Christopher RUEDA), was conducted upon RUEDA-SANABRIA's mother's consent. At the time of this cursory search, a firearm, among other items, were located.

34. At the residence, law enforcement made contact with Christopher RUEDA and conducted an interview. During the interview, Christopher RUEDA confirmed that the gray Dodge Ram (SE-6710) that was registered in his name was his brother's, RUEDA-SANABRIA.

35. After the interview, RUEDA-SANABRIA was released and was observed by law enforcement returning to the listed address of 3307 S. 8th Street, Milwaukee, WI.

36. Law enforcement has made contact with RUEDA-SANABRIA at **Target Cell Phone #1** on multiple occasions after his release.

37. During the evening hours of August 10, 2022, case agents conducted physical surveillance of RUEDA-SANABRIA. During the course of this surveillance, RUEDA-SANABRIA identified law enforcement vehicles that had been conducting surveillance on RUEDA-SANABRIA. RUEDA-SANABRIA contacted case agents shortly after the physical surveillance was terminated.

38. On both August 10 and August 11, 2022, RUEDA-SANABRIA contacted case agents using **Target Cell Phone #1**. During the contact with case agents on those dates, RUEDA-SANABRIA requested to meet with case agents in person.

39. On August 11, 2022, case agents met with RUEDA-SANABRIA at the Cudahy Police Department. RUEDA-SANABRIA contacted case agents using **Target Cell Phone #1** when RUEDA-SANABRIA arrived at the Cudahy Police Department.

40. During the meeting, RUEDA-SANABRIA asked case agents about the prior evening and why law enforcement was following RUEDA-SANABRIA. Case agents were vague in their response, and RUEDA-SANABRIA stated that RUEDA-SANABRIA was confused.

41. Case agents explained that RUEDA-SANABRIA may be charged based upon his involvement in the kilograms of cocaine located at 3607 W. Rogers Street on June 21, 2022.

42. RUEDA-SANABRIA stated that RUEDA-SANABRIA had no involvement in the transaction and that he was giving his friend "Juan" a ride. RUEDA-SANABRIA stated that RUEDA-SANABRIA wasn't worried about getting charged because RUEDA-SANABRIA had picked up "Juan" to give "Juan" a ride.

43. RUEDA-SANABRIA stated that on June 21, 2022, "Juan" requested RUEDA-SANABRIA drive "Juan" to a taco truck in the area of the Menards' store on Miller Park Way in West Milwaukee. RUEDA-SANABRIA stated that "Juan" was at 3607 W. Rogers Street and RUEDA-SANABRIA picked up "Juan" from that residence. RUEDA-SANABRIA drove "Juan" to the taco truck where "Juan" exited the vehicle. RUEDA-SANABRIA stated that RUEDA-SANABRIA did not observe "Juan" meet with anybody or see any vehicles that "Juan" met with because RUEDA-SANABRIA was parked where RUEDA-SANABRIA couldn't see very much of the parking lot. "Juan" returned to RUEDA-SANABRIA's vehicle and RUEDA-SANABRIA drove "Juan" back to 3607 W. Rogers Street.

44. When RUEDA-SANABRIA was asked about the approximately 10 cellular telephones that were located in RUEDA-SANABRIA's center console of the Dodge Ram. RUEDA-SANABRIA stated that the cellular telephones did not belong to him and that friends of RUEDA-SANABRIA had given RUEDA-SANABRIA the phones for RUEDA-SANABRIA to "get rid of." RUEDA-SANABRIA denied that any of the cellular telephones located in the center console belonged to RUEDA-SANABRIA.

45. Case agents asked RUEDA-SANABRIA if RUEDA-SANABRIA wanted to cooperate with the investigation and RUEDA-SANABRIA stated that RUEDA-SANABRIA did not know very much information that would assist the agents in the investigation and continued to question why case agents were interested in RUEDA-SANABRIA. It was case agents' opinion that RUEDA-SANABRIA had requested the meeting to attempt to determine what evidence case agents had against RUEDA-SANABRIA. Accordingly, case agents stopped the meeting and told RUEDA-

SANABRIA that if RUEDA-SANABRIA had any further information about criminal activity, that RUEDA-SANABRIA should contact case agents.

46. In May of 2022, case agents met with SOI #17. SOI #17 provided the following information related to RUEDA-SANABRIA.

47. SOI #17 identified two photographs of RUEDA-SANABRIA and stated that SOI #17 knows RUEDA-SANABRIA by the street name of "Gio."

48. SOI #17 began purchasing cocaine from RUEDA-SANABRIA around 2013 or 2014. SOI #17 began purchasing multiple ounce quantities of cocaine initially but then began purchasing kilogram quantities of cocaine from RUEDA-SANABRIA. SOI #17 stated that throughout 2018 and the beginning of 2019, SOI #17 was purchasing between seven and ten kilograms of cocaine each week from RUEDA-SANABRIA. SOI #17 stated that RUEDA-SANABRIA also introduced SOI #17 to other kilogram-level cocaine suppliers associated with RUEDA-SANABRIA from whom SOI #17 also obtained kilogram quantities of cocaine.

49. SOI #17 stated that RUEDA-SANABRIA used numerous cellular telephones to conduct drug transactions.

50. Beginning in May of 2022, SOI #17 made statements against SOI #17's penal interest. According to law enforcement databases, SOI #17 has prior felony convictions for a drug trafficking conspiracy and the use of firearms in furtherance of drug trafficking, and a conviction for possessing a dangerous weapon under age 18. SOI #17 is cooperating in exchange for consideration of the two previously mentioned felony convictions. Thus far, the information provided by SOI #17 has been corroborated by information known to case agents, as well as other law enforcement officials, gathered during the course of the investigation. More specifically, SOI 17's information has been corroborated by seizures of physical evidence, documentary evidence, and lawfully obtained device extractions, physical surveillance, and examination of other police reports. Within the context of the information detailed and relied upon for purposes of this affidavit, case agents believe SOI #17 is credible and S's information reliable.

51. In June of 2022, case agents met with SOI #18. SOI #18 provided the following information related to RUEDA-SANABRIA.

52. SOI #18 stated that SOI #18 became aware that SOI #17 was obtaining cocaine from "Gio" in early 2018. SOI #18 identified a photograph of RUEDA-SANABRIA and stated that the photograph depicted a person SOI #17 knows as "Gio."

53. SOI #18 had personally observed RUEDA-SANABRIA supply SOI #17 with at least five kilograms of cocaine each month but knew that SOI #17 was obtaining at least three to four kilograms of cocaine each week from RUEDA-SANABRIA throughout 2018. SOI #18 was also introduced to other cocaine suppliers of SOI #17, which suppliers RUEDA-SANABRIA had introduced to SOI #17 for the purpose of obtaining kilogram quantities of cocaine.

54. Beginning in June of 2022, SOI #18 made statements against SOI # 18's penal interest. According to law enforcement databases, SOI #18 has a prior felony conviction for a drug trafficking conspiracy. SOI #18 is cooperating in exchange for consideration of the previously mentioned felony conviction. Thus far, the information provided by SOI #18 has been corroborated by information known to case agents, as well as other law enforcement officials, gathered during the course of the investigation. More specifically, SOI 18's information has been corroborated by seizures of physical evidence, documentary evidence, and lawfully obtained device extractions, physical surveillance, and examination of other police reports. Within the context of the information detailed and relied upon for purposes of this affidavit, case agents believe SOI #18 is credible and SOI #18's information reliable.

55. Based on my training and experience, and knowledge of this investigation, I believe that RUEDA-SANABRIA was involved in the six-kilogram cocaine transactions in June 2022. DIAZ was observed exiting RUEDA-SANABRIA's vehicle with what I believe to be the cocaine that was later seized from MUNOZ's residence. Rather than leaving the area, RUEDA-SANABRIA parked further down the street, positioning his vehicle in close proximity of the residence. Based on my training and experience, and knowledge of this investigation, I further believe that RUEDA-

SANABRIA was monitoring the transaction to ensure it was completed and/or to collect payment. According to the evidence, RUEDA-SANABRIA has been a cocaine source of supply in the Milwaukee area for many years. I further believe that RUEDA-SANABRIA uses **Target Cell Phone #1**, in addition to other cellular telephones yet unknown, to facilitate his narcotics trafficking, and that the location information associated with **Target Cell Phone #1** will reveal evidence and/or other locations of his criminal activities.

## CONCLUSION

56.     Case agents searched law enforcement databases to confirm that **Target Cell Phone #1** is currently being serviced by AT&T Corporation.

57.     Case agents are requesting this warrant authorizing the disclosure of data related to **Target Cell Phone #1** for 30 days to further investigate RUEDA-SANABRIA's activities, and to identify locations to which RUEDA-SANABRIA is traveling to further his drug distribution network.

58.     Based upon my training and experience, I know that individuals involved in drug trafficking use their cellular telephones to contact other drug dealers and drug purchasers, and that information relating to their telephones may show the areas in which they are trafficking drugs and the individuals who they are contacting to sell or distribute the drugs. Based upon the facts in this affidavit, there is probable cause to believe that RUEDA-SANABRIA is engaged in the trafficking and distribution of cocaine and is using **Target Cell Phone #1** while engaged in these crimes.  I further submit that probable cause exists to believe that obtaining the location information of **Target Cell Phone #1** will assist case agents in determining RUEDA-SANABRIA's customers, co-conspirators, sources of supply, and help to identify stash houses.

59.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as

"tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

### Cell-Site Data

60. Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

61. Based on my training and experience, I know that AT&T also can collect NELOS data. Network Event Location Operating System information (NELOS) consists of historical precision GPS location information, historical handset location data, and handset triangulation data.

### E-911 Phase II / GPS Location Data

62. I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking

technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

**Subscriber Information**

63.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

64. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

65. I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

66. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

67. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until **180 days** after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic

information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

68. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

# ATTACHMENT A

## Property to Be Searched

1. Records and information associated with the cellular device assigned call number (312) 834-8268 (referred to herein and in Attachment B as "Target Cell Phone #1"), with a listed subscriber(s) Christopher RUEDA that is in the custody or control of AT&T Corporation, (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at 11760 U.S. Highway 1, Suite 300, North Palm Beach, Florida 33408.

2. The Target Cell Phone 1.

## ATTACHMENT B

### Particular Things to be Seized

### I.     Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.   The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone #1 from the time period commencing on January 1, 2018:

   i.   Names (including subscriber names, user names, and screen names);

  ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

 iii.   Local and long distance telephone connection records;

 iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

  v.   Length of service (including start date) and types of service utilized;

 vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber

2

Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records.

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone #1, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT"), and Network Event Location Operating System information (NELOS).

b. Information associated with each communication to and from the Target Cell Phone #1 for a period of up to 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each

communication, as well as per-call measurement data (also known as "real-time tool" or "RTT"), and Network Event Location Operating System information.

c. Information about the location of the Target Cell Phone #1 for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, including Network Event Location Operating System information.

   i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone #1 on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

   ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) and 846, involving Jovani O Rueda-Sanabria.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by _____. ,and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of _____. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of _____ and they were made by _____ as a regular practice; and

b.      such records were generated by _____electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of _____ in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by _____ and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

| Date | Signature |
| --- | --- |